The People *v.* The Rector, &c. of Church of the Atonement.

certainly cannot be permitted to annul his obligation under the contract, by thus withholding the means of a performance of it by the plaintiff. (*Crooke* v. *Moore*, 1 *Sandf.* 302. *West* v. *Newton*, 1 *Duer*, 283.) The case of *Hartup* v. *McDonald*, (2 *Man. and Gr.* 593,) on which the defendant relies, we think, has no application to the facts, and does not affect the principle of this case.

The judgment should be affirmed.

[ORANGE GENERAL TERM, September 17, 1866. *Scrugham*, *Lott*, *J. F. Barnard* and *Gilbert*, Justices.]

———————◆———————

THE PEOPLE, *ex rel.* Elkanah F. Remington, *vs.* THE RECTOR, CHURCH WARDENS AND VESTRYMEN OF THE CHURCH OF THE ATONEMENT.

The section of the statute relative to religious corporations, which provides that no board of trustees shall be competent to transact any business "unless the rector, if there be one, and at least one of the church wardens, and a majority of the vestrymen, be present; and such rector, if there be one, and if not, then the church warden present, or if both the church wardens be present, then the church warden who shall be called to the chair * * * shall preside at every such meeting or board, *and have the casting vote*," (1 *R. S.* 4*th ed.* 1179, § 1; 2 *id.* 5*th ed.* 604,) does not mean that the chairman shall have the casting vote only in case of a tie arising upon the votes of the other members.

The term "casting vote," as used in that section, is to be construed as authorizing the chairman, after having first voted with the rest, upon a tie occurring, to give a second vote.

Where, at a meeting of a vestry, both wardens and eight vestrymen being present, and the senior warden in the chair, five voted in favor of engaging the relator as rector, and five, including the presiding officer, in the negative, whereupon the chairman declared the resolution to be lost; *Held* that the chairman must be deemed to have given the casting vote; his declaration that the vote was lost, being equivalent to that; that upon the vote taken, the resolution to call the relator failed for lack of a majority of the votes; and if the chairman voted twice, it was *lost*, by reason of a majority voting against it.

HEARING upon the return to an alternative writ of man-
damus, after a trial of the issues of fact raised by the
return.   The relator asked for a writ of mandamus against
Arthur Sinclair, Edward Buckley, John E. Wright, Isaac
A. Biggs and James Gough, to compel them to induct him
into the office of rector of the Church of the Atonement.

*Isaac Jelfs,* for the relator.

*Justus Palmer,* for the defendants.

*By the Court,* GILBERT, J.   Upon the trial of the issues
formed upon the return to the alternative writ of mandamus,
these facts appeared : On the 28th November, 1866, a regu-
lar meeting of the vestry was held, both wardens and eight
vestrymen being present.   There being no rector, the senior
warden was duly called to the chair.   A resolution was
offered to the effect that the relator be engaged as rector for
one year from December 1, 1866.   Upon this, five voted in
the affirmative, and five, including the presiding officer, in
the negative, whereupon the presiding officer declared the
resolution to be lost.   The relator has not been otherwise
called, nor has he signified to the respondents his acceptance
of the office of rector, unless this proceeding has that effect.

It is claimed by the relator, that he was legally chosen
rector, because the senior warden, who presided at the meet-
ing, had no right to vote at all thereat, except to give the
casting vote, in case of an equality of votes, without count-
ing his own.

The statute applicable to this case provides that "the
church wardens and vestrymen elected at the first election,"
and their successors in office, of *themselves,* but if there be
a rector, then, together with the rector, shall form a vestry
and be the trustees of such church or congregation ; and
*such trustees* and *their successors* shall, by virtue of the act,
be a body corporate, &c. and the church wardens and vestry-

men shall have power to call and induct a rector to such church or congregation as often as there shall be a vacancy therein. *Provided, however,* that no board of trustees shall be competent to transact any business, " unless the rector, if there be one, and at least one of the church wardens, and a majority of the vestrymen, be present ; and such rector, if there be one, and if not, then the church warden present, or if both the church wardens be present, then thè church warden who shall be called to the chair by a majority of voices shall preside at every such meeting or board, *and have the casting vote.*" (1 *R. S.* 4*th ed.* 1179, § 1. 2 *id.* 5*th ed.* 604.)

The question, then, is, what is the legal signification and effect of the phrase "*and have the casting vote.*" Does the calling a church warden to the chair, annul for the time being his right as a constituent member of the corporate body, or absolve him from the execution of any trust or duty devolved upon him as such member ? No authority for such a proposition was cited, except the learned treatise of Mr. Curtis on *Parliamentary Practice.* This author does, indeed, in his commentary on the practice of legislative assemblies, in the absence of express regulations, sustain the position of the relator's counsel. But he shows at the same time that the reasons for such practice are peculiar to that kind of assembly. In the English house of commons, the speaker never votes but when there is an equality without his casting vote, which in that case creates a majority ; but the speaker of the house of lords has no casting vote. His vote is counted with the rest of the house ; and in case of an equality, the *non-contents*, or negative voices, have the same effect and operation as if in fact they were a majority. (1 *Bl. Com.* 181, *n.*)

The practice in the congress of the United States, and in the legislature of this state, is different. Neither the vice president of the United States, nor the lieutenant governor of this state, as presiding officer of the senate, has any vote,

unless the votes be equally divided. The speaker of the house of representatives of the United States, and of the assembly of this state, each have a vote.

The rule of the common law applicable to corporations, however, is uniform and well settled ; and it is applicable to religious societies incorporated under our law. They do not belong to the class of ecclesiastical corporations, in the sense of the English law; but are civil corporations, governed by the ordinary rules of the common law. (*Robertson* v. *Bullions,* 1 *Kern.* 243.) In corporations consisting of an indefinite number, a major part of those who are existing at the time are competent to do the act. But when the body is definite, (as it is in this case,) there must be a major part of the whole number, *for it is a special appointment.* (*Rex* v. *Varlo, Cowp.* 250. *Rex* v. *Bellinger, Com.* 293. This rule of the common law has been expressly declared by the statute. (2 *R. S.* 555, § 27. *Horton* v. *Garrison,* 23 *Barb.* 176.)

As a majority of the vestry did not vote in favor of calling the relator, he was not, therefore, called or elected, unless the statute giving the chairman a casting vote is to be construed as meaning a vote only in case of a tie arising upon the votes of the other members. The plain reading of the statute does not admit of such a construction. It first vests the power of election in a body of which the chairman is a constituent member. This is a grant to every such member of a right to vote. It then contains another grant of power *to the presiding officer, virtute officii,* in the words, "he shall have the casting vote." What is the legal effect of the latter grant ? By the common law, a casting vote sometimes signifies the single vote of a person who never votes ; but in the case of an equality, sometimes the double vote of a person who first votes with the rest, and then, upon an equality, creates a majority by giving a second vote. (1 *Bl. Com.* 181, *n. Jac. Law. Dic. Parliament,* 7.) I think that in the statute under consideration, the term "casting vote" is

The People *v.* The Rector, &c. of Church of the Atonement.

used in the latter sense. (1 *Bl. Com.* 478, *n. Cowp.* 377.) It is true that a double vote is not allowed in corporate meetings, except by express statute, (*Anon. Lofft's Rep.* 315 ; 15 *Vin.* 214;) but that it ought to be allowed where the statute is clear, cannot be doubted. In *Rex* v. *Giniver,* (6 *T. R.* 732,) a charter had been granted creating a corporation, and giving *the bailiffs and aldermen,* or a *major part of them,* power to choose a senior bailiff. A by-law was passed, giving *to the senior bailiff the casting voice,* in cases where in the election of bailiffs, aldermen or other officers *the voices should happen to be equal.* The court held the by-law to be void, because it was contrary to the constitution of the charter ; but it was tacitly conceded that if the provision of the by-law had been incorporated in the charter, the senior bailiff would have had, in case of an equality of votes, a double vote. Lord Kenyon, Ch. J. and Lawrence J. expressly asserted that such would have been the effect of the by-law if it had been valid. (*See also Rex* v. *Bumpstead,* 2 *Stew.* 231. *State* v. *Adams,* 2 *B. & Ad.* 699.) It appears from the evidence that the chairman voted with his colleagues, and that the votes were equal. He must be deemed also to have given the casting vote. His declaration that the vote was lost, was equivalent to that ; and it would not be strictly correct unless it should be so regarded. But if the foregoing views are correct, it is immaterial whether he declared the resolution lost upon the fact that the votes were equal, or whether he gave a casting vote. Upon the vote actually taken, the resolution to call the relator failed, for lack of a majority of the votes of all the members of the vestry entitled to vote. If the chairman voted twice, it was *lost* by reason of a majority voting against it.

It follows, therefore, that the respondents are entitled to judgment, with costs.

[KINGS SPECIAL TERM, December 26, 1866. *Gilbert,* Justice.]